[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on July 7, 1990 in Bridgeport. There are two children issue of the marriage, Christina who was born on February 20, 1991, 7 years of age, and David who was born on October 12, 1994, 4 years of age. This action was commenced on April 25, 1997. On May 28, the plaintiff sought and obtained an ex parte restraining order, and the parties have lived separate and apart since that date.
The plaintiff is thirty-four years of age and in good health. She is employed as a secretary in a local law firm where she has been employed but three weeks. Prior to that, she had been employed by Oxford Health Plan for three and one half years as an auditor. She earns $596 per week, $31,000 per year. Her mother provides day care for the children. She pays her mother $100 a week. During all of the marriage, she was the larger income provider.
The defendant is thirty-nine years of age and in good health. He is employed as a school bus driver for the Town of Trumbull in the employ of Ryder Transportation earning $347 per week or $17,373 for the year. (See plaintiff's exhibit A.) However, during school vacations, he receives unemployment compensation and, on occasion, drives charters. His total gross income for 1997 was $19,307. (See plaintiff's exhibit K.) This, then, results in a weekly amount of $371. A proper child support guideline amount based upon the net income of each of the parties results in a guideline amount of $112 per week. The current temporary order is $103 per week. CT Page 12110
Prior to the parties' marriage, the defendant worked at Sikorsky as a mechanical assembler for seven years. He left Sikorsky voluntarily in 1987 to explore other employment opportunities. He was employed by Richardson Vicks in Shelton as a lab technician for six months until the job terminated in May, 1988. He then had a job for thirteen months for Security Services and then held a position as a loan processor for Merchants Bank 
Trust Company in Norwalk until it closed in April, 1989. He was then employed as an accounting assistant with James River Corporation for two and one half years. It was this job that he held at the time of the parties' marriage. His employment since then and until his employment by Ryder has been in the security field.
The defendant holds an associates degree in Business Administration and has taken courses at Sacred Heart University and Housatonic Community College. He has 93-96 credits toward the 120 credits required for a bachelor's degree. It is clear that as a school bus driver he is not working to his capacity. This is borne out by his remarks to the plaintiff that he was "continuing a lower earning capacity by taking the school bus driver job." He also has stated that he was not going to get another job (a better job) until the divorce was over.
Based upon this testimony, the court finds that the defendant is intentionally underemployed and to strictly apply the child support guidelines in this case would be inappropriate and inequitable to the plaintiff. The court, therefore, shall deviate from the child support guidelines in accordance with § 46b-215a-3(b)(1)(B) of the Child Support and Arrearage Guidelines Regulations; the parent's earning capacity. The court finds that the defendant has an earning capacity of at least $475 per week ($24,700 per year), which results in a child support guideline figure of $135 per week.
It is clear from the testimony that the marriage of the parties has broken down. The first sign of difficulty was when the plaintiff was pregnant with their son, David, in 1994. At that time, she was in the hospital often, and the defendant was unsupportive through work or lack of it and unsupportive emotionally. After David was born, the difficulties became worse. Because of David's severe illness and his crying, the defendant constantly yelled and shouted at David and at the plaintiff. He drank to excess and was drunk four or five times per week. He was violent and verbally abusive. It was such conduct and threats of violence that initiated the restraining order in May of last CT Page 12111 year.
The defendant seeks an order that there be joint legal custody of the minor children. The plaintiff has testified that the defendant is always dictating and telling her what to do. She believes they would not be able to communicate with one another in the best interests of the children. Section 46b-56a of the General Statutes requires joint decision making by the parents. The parents must be able to work together in the best interests of the children. See Emerick v. Emerick, 5 Conn. App. 649 (1985), cert. dismissed, 200 Conn. 804 (1986). The court finds that the parties at present would be unable to do so and shall enter orders that sole legal and physical custody shall be with the plaintiff. It is in the best interests of the children that there be such an order.
The defendant has done his very best to deplete his assets completely to avoid having to give what assets he has to the plaintiff. On December 31, 1994, the defendant's father died. Prior to his death, he had executed an intervivos irrevocable trust which consisted of his father's real property at 15-17 Ridgewood Place in Bridgeport and other assets of $80,000 and liabilities of $25,000. (See plaintiff's exhibits B and N.) On January 3, 1997, the defendant assigned all his right, title and interest in said trust to his brother's children's insurance trust thereby depriving the plaintiff and their children of his interest in the trust. (See plaintiff's exhibit M.) He testified that he did this because he was following his father's wishes and that he and his father had had "very private conversations." He testified, also, that he and his brother had had a disagreement about the handling of the property at Ridgewood Place. When asked by the plaintiff why he had assigned his interest in the trust to his brother's children, he responded, "You're not going to get a damn dime from me at all", according to plaintiff's testimony.
Recognizing that the defendant's assignment of his father's trust interest could be considered a transfer in fraud of the plaintiff as a creditor, plaintiff's counsel moved to join defendant's brother as a third party defendant. (See docket entry no. 114.) An amended complaint to include the defendant, Mario Ceste, was served on the defendant Mario G. Ceste on March 13, 1998, and the amended complaint was filed on March 17, 1998. (See docket entry no. 125.) On April 21, 1998, the plaintiff filed a Motion for Reconciliation. (See docket entry no. 127.) The plaintiff has testified that the defendant insisted that a CT Page 12112 condition of reconciliation was that the third party action against Mario Ceste be withdrawn. It was withdrawn on June 12, 1998. (See docket entry no. 129.) Plaintiff testified that the reconciliation attempt was prompted by an urging from daughter Christina. The attempt at reconciliation failed.
On March 31, 1997, the defendant's interest in his Sikorsky employee savings plan was $19,062.41. (See plaintiff's exhibit J.) His financial affidavit shows a current balance of $10,300. However, the balance in this account is really $20,000. The defendant borrowed $9,700 on a collateral loan and shows this as a liability on his financial affidavit, but he has also deducted this amount under part 4G of his financial affidavit. He has, in effect, deducted the collateral loan twice.
On March 31, 1997, the defendant had a savings account at People's Bank with a balance of $20,547. On June 2nd, $6,500 was withdrawn, on June 4th $3,000 was withdrawn and on June 5th $1,900 was withdrawn. Withdrawals were made in August, September and October, 1997 totaling $5,500. (See plaintiff's exhibit F.) The defendant's financial affidavit reports a current balance of $2,000 in this account. Of the $6,500 withdrawn on June 2nd, the defendant claims $1,500 was paid to his brother as rent and security deposit for rental of the real property previously owned by his father and currently owned one half by his brother and one half by his brother's children's insurance trust and $5,000 to his brother for a 1988 Dodge Aries, which was his father's property and which the defendant started driving in 1995. While he claims he paid his brother $5,000 for this automobile, he immediately valued the car for $1,000 on his financial affidavit dated June 5, 1997. (See plaintiff's exhibit G.) The withdrawal on June 4th of $3,000 was to establish an account for the defendant as custodian for son David under the Uniform Gifts to Minors Act. (See plaintiff's exhibit H.)
During the same period of time, the defendant increased his liabilities from $1,900 to $25,195. (See plaintiff's exhibit G and defendant's affidavit of October 5, 1998.) The $1,900 indebtedness reported in his financial affidavit of June 5, 1997, was paid by the plaintiff.
The action was commenced on April 25, 1997. This was, therefore, before the automatic orders which took effect on October 1, 1997. (Section 25-5 of the Practice Book, Revision of 1998.) On May 28, 1997, the plaintiff sought an ex parte CT Page 12113 restraining order. This was served upon the defendant on the same date. (See docket number FA97 0343529.) Both parties were in court on June 3 at which time the restraining order was vacated and the plaintiff was granted sole possession of the family residence at 50 Balsam Avenue in Bridgeport. An order enjoining transfer, disposal or withdrawal from any assets or bank accounts pending further order of the court except for funds used for ordinary and reasonable living expenses was entered on June 5, 1997. That motion was pending and calendared for that date and known to the defendant. It is the defendant's claim that all of the use of these monies was necessitated to meet his ordinary and reasonable living expenses.
During this period of time, the defendant would have earned approximately $24,000 ($19,307 for the period June, 1997 to June 1998 and one fourth that amount for the period July, August and September, 1998). Withholding to include federal and state taxes and social security would amount to $62.00 per week for a total of $4,030 ($62.00 times 65 weeks) leaving a net of $20,000. During this period $103 per week was paid by way of support for a total of $6,695 thus leaving $13,305 available for ordinary and reasonable living expenses or $205 per week. His weekly expenses of $512 per week includes support of $103, which has already been deducted, and rental expenses of $151 per week he claims he paid to his brother. There has been no evidence to support the defendant's testimony in this regard, and the court does not accept his testimony in this regard. To this amount must be added what defendant claims are payments on indebtedness of $165 per week for total weekly expenses of $423. Applying the net income available noted above leaves a balance of $218 per week, which would need to be supplied from principal and/or loans. Borrowing and asset withdrawals were as follows:
 People's Bank withdrawals $18,500 (Initial balance of $20,547 less current balance of $2,000 as reputed in defendant's current financial affidavit.)
Liabilities 25,195
$43,695
$43,695 divided by 65 weeks = $672.00 per week
CT Page 12114 This is $450 per week more than what was reasonable and ordinary living expenses even accepting all of the other figures in the defendant's financial affidavit.
The court finds that the defendant has done everything that he could to diminish his assets. The court finds, further, that the defendant knowingly and wilfully disobeyed the injunctive order entered on June 5, 1997.
With regard to the transfer of $3,000 from the People's savings account to the custodian account for David, the court finds by clear and convincing evidence that this transfer was in fraud of the plaintiff and orders that this conveyance should be set aside and the account shall be the plaintiff's property free of any custodianship or trusteeship for David S. Ceste, the parties' son.
The plaintiff is presently living in Derby in a rented condominium. David, who turned four on October 12, attends nursery school at St. Catherine's. Christina is a third grade student at St. Catherine's. Tuition for both children amounts to $3,250 per year. As previously noted, the plaintiff's mother cares for the children after school, and plaintiff pays her $100 per week. The defendant has exercised visitation regularly every Wednesday and Saturday. The children love their father, and the plaintiff wishes for the children to see their father regularly.
The defendant has endeavored to show that the plaintiff is working at less than her full potential. She did earn substantially more at her previous position with Oxford Health Plan. Oxford Health Plan offered overtime on a regular basis. However, the plaintiff claimed the environment became too unstable and the Plan did experience financial difficulty. The plaintiff does own options to purchase 300 shares of Oxford Health Plan stock but the option price is higher than the current market price.
In determining the proper orders in this case, the court must consider the factors set forth in §§ 46b-81, 46b-82, 46b-84
and 46b-215(b) of the General Statutes. With respect to alimony and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; CT Page 12115 Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valante v. Valante, 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
As has been said by the Appellate Court in the case ofEmanuelson v. Emanuelson, 26 Conn. App. 527, 530, 531 (1992):
 "General Statutes § 46b-81(c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must evaluate all the factors listed, it has broad discretion when applying the statutory factors to assign the parties' assets. O'Neill v. O'Neill, 13 Conn. App. 300, 312, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988) . . .
 The statutory factors for determining alimony in § 46b-82
are almost identical to the factors used to distribute property in § 46b-81(c)."
The court has considered all of the criteria of §§ 46b-81,46b-82, 46b-84 and 46b-215(b) of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account,"Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman,188 Conn. 232, 234 (1982). CT Page 12116
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and that the court need not give equal weight to each factor. Kane v. Parry,24 Conn. App. 307, 313-14 (1991).
The court has also considered the issue of counsel fees as requested by the plaintiff. Such fees are allowable under the provisions of § 46b-62 of the General Statutes. The court has considered the indicia of § 46b-82 of the General Statutes also in that regard.
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. The defendant is at fault for the breakdown of the marriage.
5. The court finds an arrearage of temporary support in an amount of $171.61 together with such additional amount as has not been paid prior to October 5, 1998.
The court enters the following orders:
1. A decree of dissolution of marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. The plaintiff shall have sole legal and physical custody of the two minor children, Christina, age 7, and David, age 4.
3. The defendant shall have reasonable visitation with the minor children to include visitation on Wednesday afternoon after school until 7:30 p. m., Saturday from 10:00 a.m. to 7:30 p. m., alternate weekends from Friday at 5:00 p. m. to Sunday at 7:30 p. m., alternating holidays and one week of summer vacation. The defendant shall take the children to those activities or events in their best interest that may occur during these times. CT Page 12117
4. The defendant shall pay child support to the plaintiff in the amount of One Hundred Thirty-five ($135.00) Dollars per week to commence on October 30 for the week of November 2, 1998, payable in advance. An immediate order for wage withholding shall issue to secure the order for support.
5. The plaintiff shall be entitled to claim both children as dependents for tax purposes for so long as her net employment income exceeds that of the defendant. At such time as the defendant's net employment income exceeds that of the plaintiff, this provision of the judgment may be subject to modification.
6. The defendant shall pay forthwith the support arrearage.
7. The defendant shall pay periodic alimony to the plaintiff in an amount of One ($1.00) Dollar per year terminable upon the first to occur of the following events: the death of either party, the plaintiff's remarriage, or October 12, 2012. The same may be modifiable in accordance with the provisions of § 46b-86(a) and § 46b-86(b) of the General Statutes.
8. The defendant shall pay to the plaintiff by way of lump sum alimony the sum of Fifteen Thousand ($15,000) Dollars to be paid in payments of Five Thousand ($5,000) Dollars each on September 1, 1999, September 1, 2000 and September 1, 2001. This sum is by way of maintenance and support for the plaintiff and is not to be considered as dischargeable in bankruptcy.
9. The defendant shall assign and transfer to the plaintiff by way of assignment of estate pursuant to § 46b-81(c) of the General Statutes the following, all within fifteen (15) days of the date hereof:
 1. One Thousand ($1,000) Dollars from the Peoples savings bank account.
2. His interest in the 1992 Ford Taurus.
 3. Seven Thousand Five Hundred ($7,500) Dollars from his United Technologies savings plan. Plaintiff's counsel shall prepare a Qualified Domestic Relations Order acceptable in form to United Technologies to insure the assignment of said savings plan to the plaintiff. The CT Page 12118 cost of preparing said Qualified Domestic Relations Order shall be borne entirely by the defendant.
10. The defendant shall assign and transfer to the plaintiff the custodian account he has in his name as custodian for David S. Ceste, which shall be the plaintiff's sole property to do with as she chooses.
11. Whatever personal property is in each party's possession shall be the personal property of the possessor free of any claim or demand by the other party.
12. The property listed on the plaintiff's financial affidavit of October 5, 1998, together with her stock options in Oxford Health Plan and her 401(k) plan through Oxford Health Plan shall be wholly hers free of any claim or demand by the defendant.
13. The property listed on the defendant's financial affidavit of October 5, 1998, except as stated above, shall be wholly his free of any claim or demand by the plaintiff.
14. Each party shall be responsible for the liabilities listed in his or her financial affidavit and shall indemnify and hold harmless the other from any claim or demand thereon.
15. The defendant shall maintain the life insurance policies listed in his financial affidavit totaling payable upon death values of $200,000 naming the plaintiff as primary irrevocable beneficiary for so long as he is obligated to pay alimony to the plaintiff. The children shall be named as secondary beneficiaries in equal shares. If the defendant's obligation to pay alimony should terminate while he is still obligated for the support of the minor children, the plaintiff shall be named as primary beneficiary as trustee for the minor children. The defendant shall provide proof of such insurance and designation of beneficiary in accordance with this order within thirty (30) days of the date hereof and on January 4, 1999 and thereafter annually in the first business day of January.
16. Each party shall maintain whatever medical insurance is available to him or her through his or her employment for the benefit of the minor children. The defendant's medical insurance shall be the primary insurance and the plaintiff's CT Page 12119 shall be considered secondary. All unreimbursed medical, dental, including orthodontia, pharmaceutical, psychiatric, psychological, mental and hospitalization expenses of the minor children shall be borne equally by the parties. The plaintiff shall have the benefit of § 46b-84(d) of the General Statutes.
17. The defendant shall pay to the plaintiff the sum of Twenty-five Hundred ($2,500) Dollars as a contribution towards her counsel fees within thirty (30) days of the date hereof.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE